**THE GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**LUIS ALI, Defendant**

Criminal No. 264/2001

Territorial Court for the Virgin Islands

Division of St. Croix ·

January 23, 2003

EDGAR A. CHRISTENSEN, ESQ., Department of Justice, Christiansted, St. Croix, United States Virgin Islands, *Attorney for Plaintiff*

JOMO MEADE, ESQ., Frederiksted, St. Croix, United States Virgin Islands, *Attorney for Defendant*

DONOHUE, *Judge*

## MEMORANDUM OPINION

(January 23, 2003)

### I. INTRODUCTION

THIS MATTER came before the Court for a hearing on Defendant's Motion to Suppress on December 27, 2001. The Defendant appeared through his attorney, Jomo Meade, Esquire; the Government appeared through Assistant Attorney General Edgar Christensen. Daria Stevens and Police Officer Frankie Ortiz testified at the hearing. The Court granted Defendant's motion to suppress after considering the testimony of the witnesses and the arguments of Counsel. The following incorporates, and is in addition to the findings of fact and conclusions of law entered on the record at the time of the hearing.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2001, Officers of the Virgin Islands Police Department, who were members of a newly created Anti-Violence unit, were conducting roadblock/check points on Route 69 in the area of Estate Grove Place and the Northern entrance to the "New Drive-In" road. Police Sergeant Winsbut McFarlane verbally directed the Officers in the Anti-Violence unit to stop every vehicle at that location and check for driver's license, registration and insurance. That did not happen. Based upon the testimony given at the hearing, Officers permitted cars to pass through the roadblock while they were engaged in checking the driver's license, registration and insurance of other cars previously stopped.

Daria Stevens drove south on Route 69 with the Defendant seated in the front passenger seat. The Defendant owns the vehicle. As the Defendant's vehicle approached the four-way intersection at the beginning of the "New Drive-In" road entrance, Stevens was about to make a right turn towards the Eulalie Rivera Elementary School. However, Mr. Stevens testified a Police Officer approached the vehicle and informed them of a traffic accident farther up the road toward the Eulalie Rivera Elementary School and instructed them to continue south

to the "New Drive-In" road, into the roadblock. Police Officer Frankie Ortiz, not the same Officer who previously directed Mr. Stevens to detour to the south, stopped the Defendant and asked Mr. Stevens to produce his driver's license.

The undisputed testimony of both witnesses is that Officer Ortiz did not observe any traffic violations prior to stopping the Defendant's vehicle. The Defendant was asked to produce the current vehicle registration and his driver's license. At some point Officer Ortiz ordered all occupants out of the vehicle. Officer Ortiz observed the Defendant fidgeting with his pants and then decided to pat the defendant down for his safety. When Officer Ortiz attempted to pat the Defendant down, a scuffle ensued between both of them and a .380 caliber pistol was taken from the Defendant.

The Defendant was subsequently charged with the unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a). Defendant propounded discovery on the Government on October 10, 2001, which included a request for the production of any information concerning the directive authorizing the roadblock of September 23, 2001.[1] The Government subsequently produced a memorandum dated September 7, 2001, from Deputy Chief of Police Novelle Francis to all police commanders purporting to be the written traffic directive as requested by Defendant.[2] The government notified the Defendant by letter dated October 24, 2001 that there was no written traffic directive, but that Sergeant Winsbert McFarlande authorized the traffic stops.[3] Shortly thereafter, Defendant filed the instant Motion to Suppress Evidence, which required an evidentiary hearing.

The Defendant's contention is that the stop, which resulted in the seizure of evidence from the Defendant's vehicle or person, was unjustified. He further contends that the stop initiated by Officer Ortiz was pretextual as there was no probable cause or reasonable suspicion upon which the Officer could have stopped the vehicle. According to the

---

[1] Defendant specifically asked for information concerning persons authorizing the traffic stop, the methodology and procedures officers were to use in making the stops, and the regulatory purpose which the stops were intended to achieve.

[2] The memorandum dated September 7, 2001 announces the formation of an anti-violence unit and the officers selected to be a part of that unit.

[3] *See* Defendant's Motion to Suppress Exhibit 2.

Defendant, Officer Ortiz does not articulate any factual basis, which led him to believe that the occupants of the vehicle had committed or were about to commit an offense as is required for a legitimate "stop and frisk," nor does the Officer set forth any observation of a traffic violation that would justify the stop. Defendant cites *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979), which states that "stopping an automobile and detaining a driver in order to check his driver's license and registration of the automobile are unreasonable under the Fourth Amendment." To further illustrate the nature of the stop, Defendant points out that the officer in question forced a detour of the vehicle and its passengers. Finally, citing *Whren v. U.S.*, 517 U.S. 806, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996), the Defendant argues that the roadblock that resulted in the stop of the Defendant and his vehicle was used as a pretext to investigate violent crimes. Such a practice is unconstitutional. As proof the Defendant points to the Officer's testimony that he did not observe the Defendant violating any traffic laws.

The Government cites *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990), to support its assertion that a State's use of sobriety checkpoints was not a violation of the Fourth and Fourteenth Amendments of the United States Constitution. The Government argues that the roadblock was reasonable and that *Sitz* sanctions the resulting search.

### III. DISCUSSION

The Fourth Amendment guarantees security in persons, papers, and effects, against unreasonable searches and seizures. U.S. CONST. AMEND. IV. Searches performed in the absence of a warrant are generally unreasonable. *Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990). Exceptions to this rule have been fashioned where the Court has recognized that the government's interest in conducting a warrantless search outweighs an individual's privacy interest. Conducting a brief investigatory stop when an officer has a reasonable, articulable suspicion that criminal activity is afoot has been deemed consistent with the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Reasonable suspicion can be formed by the observation of purely legal activity. 392 U.S. at 22. The Supreme Court has held that stopping an automobile and detaining its occupants

constitutes a seizure within the meaning of the Fourth and Fourteenth Amendments, even though the stop may be limited and the resulting detention brief. *See Delaware v. Prouse*, 440 U.S. 648, 661 (1979) (citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S. Ct. 3074, 3082-3083, 49 L. Ed. 2d 1116 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 2578, 45 L. Ed. 2d 607 (1975) and *cf. Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L. Ed. 2d 889 (1968)). On the other hand, stopping an automobile where the police have probable cause to believe that a traffic violation has occurred is reasonable. *See Pennsylvania v. Mimms*, 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977).

■ The *Prouse* Court further stated that the "essential purpose to the proscriptions of the Fourth Amendment is to impose a standard of "reasonableness" upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions ...'" *See* 440 U.S. at 654, quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 56 L. Ed. 2d 305, 98 S. Ct. 1816, 1820 (1978). The Court expounded upon the issue as follows:

> When there is not probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations or other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered— we cannot conceive of any legitimate basis upon which a patrolman could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver. This kind of standardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.

440 U.S. at 661.

Finally, in *Prouse*, the Court held that "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered ... stopping an automobile and detaining the driver in order to check his driver's license and the registration of the vehicle are unreasonable under the Fourth Amendment." *See id.* at 663. The Court cautioned, however, that the

holding does not preclude states from developing methods for spot checks that are less intrusive and that do not involve unconstrained exercises of discretion of police officers. *Id.*

The Defendant cites *Prouse* to support his proposition that the stop was illegal from its inception. It is important to note, however, that the *Prouse* Court had no intention of outlawing all such stops—just those seemingly at random.

In *Sitz*, the Supreme Court held true to its cautionary statements in *Prouse* by finding reasonable a sobriety checkpoint program instituted by the state of Michigan. The Michigan State Department of Police established the program through a committee that created guidelines setting the procedure to govern checkpoint operations, site selection and publicity.[4] *Id.* Here, the Court stated that unlike *Prouse*, "this case involves neither a complete absence of empirical data nor a challenge to random stops." *Id.* at 454. In holding Michigan's program consistent with the Fourth Amendment, the Supreme Court further stated, "the balance of the State's interest in preventing drunken driving ... and the degree of intrusion upon individual motorists stopped weighs in favor of the program." *Id.*

The issue before the *Sitz* Court was whether the state's use of a sobriety checkpoint was an intrusion of privacy on the Michigan citizenry. The Court stated "the balance of the State's interest in preventing drunken driving, the extent to which this system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped, weighs in favor of the state program." The Court thereby found Michigan's sobriety checkpoint program reasonable within the parameters of the Fourth Amendment.

The testimony of both witnesses serves to support a finding by this Court that the stop was unjustified as per *Prouse*. Officer Ortiz credibly testified to the fact that he was given the directive to stop all cars encountering the roadblock. He further testified that this, in his opinion, was impossible and as a result did not stop all cars along the route. Additionally, the officer admitted that there was no other reason outside

---

[4] The Michigan Department of State Police and director established the sobriety checkpoint program by appointing a Sobriety Checkpoint Advisory Committee. This committee created guidelines that set forth procedure governing the checkpoint operations, site selection and the publicity of the program.

of the verbal directive for stopping the vehicle in which the Defendant was a passenger. The credible testimony of Mr. Stevens coincides with the testimony of Officer Ortiz as he also stated that while they were stopped, several cars were allowed to go by without intrusion. Both testified to the fact that not *all* cars or persons encountering the roadblock were stopped, thereby bringing into question the officer's use of discretion. It is that same use of "unbridled discretion" that the *Prouse* Court sought to deter in its holding.

The Government's reliance on *Sitz* in the instant case is misguided. While the Supreme Court upheld the use of Michigan's sobriety checkpoint, it was the existence of empirical evidence and the presence of written guidelines and procedures that aided in the finding that the checkpoint was consistent with the Fourth Amendment. During the suppression hearing, the Government failed to introduce any evidence that would have brought the roadblock at issue into the realm of that outlined in *Sitz*. There was an absence of a written directive outlining the checkpoints for the traffic stops, the procedure that was to be followed or the empirical evidence to support the use of the checkpoints. In the absence of such data, the roadblock in this case has the character of those proscribed by the Supreme Court in *Prouse*.

■ In the instant case, Officer Ortiz testified that the only reason he stopped the Defendant's vehicle was the verbal directive given by Sgt. Winsbut McFarlane. This reason as articulated by Officer Ortiz results in the following observations: First, Officer Ortiz did not observe any activity on the part of the Defendant that would permit a finding of either probable cause or reasonable suspicion. Second, the Officer's stop of the Defendant's vehicle was through the Officer's discretion. Therefore this Court must find that the stop herein was unjustified.

The Defendant finally argues that the stop was perpetual. Evidence of this, as asserted by the Defendant, can be found in the September 7, 2001, memorandum from Deputy Chief of Police Novelle E. Francis Jr. to all Police Commanders announcing the formation of the anti-violence unit.[5] Defendant cites *Whren v. United States*, 517 U.S. 806 to support his assertion. In *Whren*, the Supreme Court found that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved. The Court stated, "subjective intentions play

---

[5] *See* Defendant's Motion to Suppress Exhibit # 1.

171

no role in ordinary probable cause Fourth Amendment analysis." 517 U.S. at 813. What is involved, however, is the undertaking of reasonable determination that involves a balancing of all relevant factors. *Id.* at 817. The Defendant believes that the forced detour of the vehicle and its occupants further evidences the officer's intentions.

This Court need not consider the analysis of the Defendant's argument that the traffic stop by Officer Ortiz was a pretext because that would lead to a subjective analysis not allowed in the application of the Fourth Amendment. In the absence of probable cause, this Court has carefully weighed the privacy interest of the Defendant against that interest being advanced by the government and finds that Officer Ortiz's random traffic stop of Defendant's vehicle to check for license and registration papers is a violation of the Defendant's Fourth Amendment rights.

## CONCLUSION

For the foregoing reasons this Court concludes that the stop herein was unjustified. Accordingly, the Defendant's Motion to Suppress will be granted. An appropriate order will follow.